# FEDERAL PUBLIC DEFENDER
Southern District of Florida
www.fpdsouthflorida.org

**Hector A. Dopico**
**Federal Public Defender**

**Helaine B. Batoff**
**Chief Assistant**

Location: <u>Miami</u>

Miami:

**Abigail Becker**
**Christian Dunham**
**R. D'Arsey Houlihan**
**Bunmi Lomax**
    Supervising Attorneys

Juliana Arruda
Sowmya Bharathi
Eboni Blenman
Micki Bloom
Anshu Budhrani
Michael Caruso
Eric Cohen
Tracy Dreispul
MaeAnn Dunker
Daniel L. Ecarius
Sogol Ghomeshi
Jean-Pierre Gilbert
Alexandra Hoffman
Andrew Jacobs
Srilekha Jayanthi
Ashley Kay
Evan Kuhl
Ian McDonald
Kate Mollison
Leticia Olivera
Ta'Ronce Stowes
Marisa Taney
Kate Taylor
Victor Van Dyke

Ft. Lauderdale:

**Robert N. Berube**
    Branch Supervisor
**Bernardo Lopez,**
    Supervising Attorney

Andrew Adler
Huda Ajlani-Macri
Janice Bergmann
Brenda G. Bryn
Timothy M. Day
Allari Dominguez
Margaret Y. Foldes
Sara Kane
Jan C. Smith
Wesley Wallace

West Palm Beach:

**Peter Birch,**
    Branch Supervisor

Robert E. Adler
Lori Barrist
Scott Berry
Caroline McCrae
Kristy Militello

Fort Pierce:

Kafahni Nkrumah
Renee Sihvola

November 6, 2024

The Honorable David J. Smith
Clerk of Court
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303
By CM/ECF

    RE:    *United States v. Canario-Vilomar*, No. 22-12077

Dear Mr. Smith:

Mr. Canario-Vilomar respectfully submits the district court's Order in *United States v. Cruz et. al.,* No. 22-cr-20048-KMW (S.D. Fla. Aug. 14, 2023) ("Order"), as supplemental authority pursuant to Fed. R. App. P. 28(j). A copy of the Order is attached hereto.

In *Cruz*, the district court agreed that 46 U.S.C. § 70502(d)(1)(C) "represents an unconstitutional overreach of Congress' power pursuant to the Felonies Clause," based on the "overbroad definition of 'vessels without nationality,' or 'stateless' vessels." Order at 7-8. The court found "that, as enacted, section 70502(d)(1)(C) allows for the declaration of vessels as 'stateless' on the consent <u>or</u> lack of consent from other sovereign nations, a mechanism that does not correspond with either a historical or contemporary understanding of a stateless vessel under international law." Order at 8 (emphasis in original).

The court recognized that the First Circuit panel's decision in *United States v. Davila-Reyes*, 23 F.4th 153, *withdrawn*, 38 F.4th 288 (1st Cir. 2022), had been withdrawn. Order at 4. The court was nonetheless persuaded by the panel's "comprehensive discussion of the history of the Felonies Clause ... and its relationship to international law," as well as its

| **Miami** | **Ft. Lauderdale** | **West Palm Beach** | **Ft. Pierce** |
|---|---|---|---|
| 150 West Flagler Street | One East Broward Boulevard | 250 South Australian Avenue | 109 North 2nd Street |
| Suite 1500 | Suite 1100 | Suite 400 | Ft. Pierce, FL 34950 |
| Miami, FL, 33130-1555 | Ft. Lauderdale, FL 33301-1842 | West Palm Beach, FL 33401-5040 | Tel: (772) 489-2123 |
| Tel: (305) 536-6900 | Tel: (954) 356-7436 | Tel: (561) 833-6288 | Fax: (772) 489-3997 |
| Fax: (305) 530-7120 | Fax: (954) 356-7556 | Fax: (561) 247-7094 | |

"rigorous analysis of materials demonstrating the Framers' understanding of international law principles, piracies, and felonies." Order a 9-10. *See also id.* at 10 (discussing Federalist Nos. 3, 42, and 83). The court ultimately agreed with the conclusion that "[t]he Framers intended international law to be a constraint on Congress's authority '[t]o define and punish ... Felonies committed on the high Seas.'" *Id.* at 11 (citation omitted).

The court found that "this constraint applies when Congress passes legislation deeming vessels on the high seas stateless." *Id.* (citation omitted). And, by declaring vessels stateless based solely on a nation's inability to confirm a claim of registry, "Congress extended U.S. jurisdiction beyond the limits of international law, and therefore, beyond the authority conferred by the Felonies Clause." *Id.*

Finally, "[a]lthough the Government argue[d] that Eleventh Circuit precedent forecloses this conclusion," the court found that "no prior case in the Circuit answers the question presented here." *Id.*

Respectfully submitted,

*/s/ Tracy Dreispul*
Tracy Dreispul
Assistant Federal Public Defender
*Counsel for Appellant Canario-Vilomar*

cc: Jonathan Colan (via CM/ECF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-20048-CR-WILLIAMS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS MIGUEL OLIVIER CRUZ,
NICOMEDES HERNANDEZ-ROBALLO,
JOSE ANTONIO GRANADOS-IPUANA,
RIQUELVIS ALFONSECA, and
DOMINGO MARTINEZ-PERALTA,

    Defendants.
_____/

## ORDER

**THIS MATTER** is before the Court on the Joint Motion to Dismiss the Indictment (DE 28) ("*Motion*") filed by Defendants Carlos Miguel Olivier Cruz ("*Mr. Cruz*"),[1] Nicomedes Hernandez-Roballo ("*Mr. Hernandez-Roballo*"), Jose Antonio Granados-Ipuana ("*Mr. Granados-Ipuana*"), Riquelvis Alfonseca ("*Mr. Alfonseca*"), and Domingo Martinez-Peralta ("*Mr. Martinez-Peralta*") pursuant to Federal Rule of Criminal Procedure 12(b) ("*Rule 12(b)*"),[2] to which the Government filed a response (DE 29) and Defendants replied (DE 34). The Parties then filed several responses, supplements, and notices. (DE 36; DE 37; DE 46 (filings by the Government); DE 62; DE 63 (filings by Defendants).) For the reasons set forth below, Defendants' Joint Motion to Dismiss the Indictment (DE 28) is **GRANTED**.

---

[1] Mr. Cruz is also known as Juan Enrique Epinayu.

[2] On April 17, 2023, Mr. Alfonseca pled guilty to the charges against him. (DE 66.) Therefore, Mr. Alfonseca is no longer before this Court.

## I. BACKGROUND

The Court summarizes the relevant factual background as set forth in the Indictment and Criminal Complaint. (DE 9; DE 1.) On January 7, 2022, a Maritime Patrol Aircraft ("**MPA**") detected a Go Fast Vessel approximately fifty (50) nautical miles south of Oviedo, Dominican Republic. (DE 1 at 3–4.) The vessel displayed no indicia identifying nationality and was located in international waters. (*Id.*) Suspecting that the vessel was involved in illicit maritime activity, the U.S. Coast Guard's *USS Milwaukee* was diverted to interdict and investigate. (*Id.* at 4.)

Once in the vicinity of the vessel, the *USS Milwaukee*'s boarding team observed the persons on board the vessel were jettisoning packages overboard. (*Id.*) The boarding team gained positive control of the vessel and reported five (5) individuals on board who were later identified as Mr. Cruz, Mr. Hernandez-Roballo, Mr. Granados-Ipuana, Mr. Alfonseca, and Mr. Martinez-Peralta (together, "**Defendants**"). The master was identified as Mr. Cruz, who made a claim of Colombian nationality for the vessel. (*Id.*) The Government contacted Colombia who could neither confirm nor deny the registration of the vessel. (*Id.*) Accordingly, the Coast Guard and the Government treated the vessel as "stateless" and without nationality. (*Id.*)

The Coast Guard recovered and seized a total of ten (10) bales with a total weight of 315 kilograms that later tested positive for cocaine from the vessel. (*Id.*)  All five (5) Defendants and the cocaine were taken on board the *USS Milwaukee*. (*Id.*) Defendants were detained and transferred to the Southern District of Florida. (DE 28 at 2.) On January 14, 2022, seven (7) days after being interdicted by the Coast Guard, the Government filed the Criminal Complaint (DE 1), which alleges violations of the Maritime Drug Law

Enforcement Act ("**MDLEA**") 46 U.S.C. §§ 70503(a)(1), 70506(b). (*Id.*) On January 31, 2022, twenty-four (24) days after being interdicted, Defendants were arrested. (DE 4; DE 5; DE 6; DE 7; DE 8.) On February 10, 2022, the Government filed the Indictment, charging the Defendants with one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b), and one count of possession with intent to distribute at least five kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1). (DE 9.) Litigation in this matter proceeded, and on March 16, 2022, Defendants filed the instant Motion. (DE 28.)

In the instant Motion, Defendants assert three (3) main arguments: (1) that the United States' authority pursuant to the MDLEA is limited to offenses occurring on the "high seas," and that because the incident in question took place within the Exclusive Economic Zone ("**EEZ**") of the Dominican Republic, and the EEZ is not the "high seas," the United States is without authority; (2) that the MDLEA exceeds Congress' Art. I, § 8, cl. 10[3] power to define and punish felonies on the high seas (the "**Felonies Clause**") because the Felonies Clause does not extend to drug trafficking offenses bearing no nexus to the United States; and (3) that the Indictment should be dismissed as a sanction for the Government's purported violation of Federal Rules of Criminal Procedure 5(a) and (b) and outrageous conduct. (DE 28.)

---

[3] The "Define and Punish" Clause, or art. I, § 8, cl. 10, states: "To define and punish Piracies and Felonies committed on the high seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10.

On January 20, 2022, the U.S. Court of Appeals for the First Circuit issued its opinion in *United States v. Dávila-Reyes*, 23 F.4th 153 (1st Cir. 2022), *reh'g en banc granted, opinion withdrawn*, 38 F.4th 288 (1st Cir. 2022), holding that MDLEA Section 70502(d)(1)(C) is an unconstitutional exercise of Congress' Felonies Clause authority because it extends "U.S. jurisdiction beyond the limits of international law and, hence, beyond the authority conferred by the Felonies Clause." *Id.* at 195. Defendants argue in their Motion that MDLEA Section 70502(d)(1)(C) exceeds Congress' Felonies Clause authority, citing the pertinent language in *Dávila-Reyes*, 23 F.4th at 195. On July 5, 2022, the First Circuit withdrew and vacated its opinion in *Dávila-Reyes* for rehearing en banc. *United States v. Dávila- Reyes*, 38 F.4th 288, 288 (1st Cir. 2022). Oral argument was held on October 18, 2022, but no en banc decision has been docketed as of the date of this Order.

## II. LEGAL STANDARD

Pursuant to Rule 12(b), a defendant may challenge an indictment on a variety of grounds, including lack of jurisdiction and prosecutorial misconduct. *See United States v. Kaley*, 677 F.3d 1316, 1325–26 (11th Cir. 2012) (citations omitted). In considering a motion to dismiss an indictment, a court must accept the allegations of the indictment as true. *See United States v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991); *see also United States v. Sampson*, 371 U.S. 75, 78–79 (1962). The factual allegations in the indictment must be "viewed in the light most favorable to the government[.]" *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (alteration added; citations omitted).

Moreover, pursuant to the U.S. Court of Appeals for the Eleventh Circuit's prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless

and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015). But "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

Under the MDLEA, only certain vessels are subject to the jurisdiction of the United States. 46 U.S.C. § 70502(c)(1)(A)–(F) (2018). One type of vessel subject to the jurisdiction of the United States is "a vessel without nationality." § 70502(c)(1)(A). A vessel is "without nationality" under Section 70502(d)(1)(C) when "the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C) (2018). This mandate is fulfilled when a foreign nation neither confirms nor denies a vessel's claimed registry, as is the case in the instant matter. Congress enacted the MDLEA pursuant to the Felonies Clause, which grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations." U.S. Const. art. I, § 8, cl. 10.

### III. DISCUSSION

For the reasons discussed below, the Court agrees with Defendants that MDLEA Section 70502(d)(1)(C) is a facially unconstitutional exercise of Congress' Felonies Clause Power and, therefore, grants the Motion to Dismiss.[4]

---

[4] Because the Court grants the Motion on this basis, it need not reach Defendants' argument that the indictment should be dismissed because the alleged offense took place within the EEZ of the Dominican Republic, not the high seas, and Congress' authority pursuant to the Felonies Clause is textually limited to the high seas. (DE 28 at 4–5 (citing U.S. Const. art. 1 § 8, cl. 10 (granting Congress the power "[t]o define and punish Piracies

### A. *The Eleventh Circuit has rejected the nexus argument proffered by Defendant.*

Defendants argue that the exercise of jurisdiction pursuant to the MDLEA violates due process because Congress' power pursuant to the Felonies Clause is limited to offenses bearing a nexus to the United States. (DE 28 at 13–15.) However, the Eleventh Circuit has repeatedly rejected this argument, most recently in *United States v. Santos-Santana*.[5] No. 22-10367, 2022 WL 17973602, at *6 (11th Cir. Dec. 28, 2022) ("We held in *Campbell* that 'the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach.'") (quoting *United States v. Campbell*, 743 F.3d 802, 810 (11th Cir. 2014)); s*ee*

---

and Felonies committed on the high Seas . . . .")).) The Court notes, however, that the Eleventh Circuit has held that its precedent compels the conclusion that a vessel is "in the high seas" if it is beyond "the twelve nautical miles of a nation's coast." *United States v. Santos-Santana*, No. 22-10367, 2022 WL 17973602, at *7 (11th Cir. Dec. 28, 2022) (citations omitted).

Moreover, in *United States v. Beyle*, 782 F.3d 159 (4th Cir. 2015), the Fourth Circuit reasoned that, although "the part of UNCLOS [United Nations Convention on the Law of the Sea, Dec. 10, 1982, 1833 U.N.T.S. 397, 21 I.L.M. 1245] that is titled 'High Seas' concerns the waters extending beyond the borders of the EEZ [citing UNCLOS, art. 86], almost all of the treaty's high-seas provisions apply with equal force inside the EEZ as they do outside it [citing UNCLOS, art. 58(1)–(2)]." *Id*. at 167. The panel therefore characterized the EEZ bordering a particular nation's territorial sea as "merely a part of the high seas where that nation has special economic rights and jurisdiction." *Id.* Specifically, "UNCLOS grants coastal nations certain rights to natural resources within the EEZ, as well as jurisdiction over marine scientific research and protection and preservation of the marine environment." *Id.* (citing UNCLOS, art. 56(1)(a), (b)). However, "[a]ny allocation of economic rights . . . is a far cry from conferring on a nation the exclusive authority endemic to sovereignty to define and punish criminal violations." *Id.* On this basis, the Fourth Circuit declined to use UNCLOS' grant of "certain specific enumerated rights as a wedge to dramatically expand [a coastal nation's] plenary control past the twelve-nautical-mile maximum." *Id.*

[5] Defendants concede in the instant Motion that the Eleventh Circuit has rejected the nexus argument before, citing *United States v. Campbell*, 743 F.3d 802 (11th Cir. 2014), but advances the argument "for purposes of further review." (DE 28 at 14.)

*also United States v. Cruickshank*, 837 F.3d 1182, 1188 (11th Cir. 2016) (holding that the lack of a nexus requirement does not render the MDLEA unconstitutional). Thus, in consideration of the clear and binding precedent regarding this argument, the Court denies the Motion as it relates to the assertion that Defendants' actions lack a sufficient nexus to the United States to establish jurisdiction.

### B. *Section 70502(d)(1)(C) is an unconstitutional exercise of congressional authority.*[6]

Although Defendants' argument as to nexus fails, the Court agrees that section 70502(d)(1)(C) represents an unconstitutional overreach of Congress' power pursuant to the Felonies Clause and, for that reason, grants the Motion. At issue is MDLEA Section 70502(d)(1)(C), which this Court holds is an unconstitutional extension of U.S. jurisdiction

---

[6] This issue is being considered by the Eleventh Circuit in *United States v. Alfonso*, No. 22-10576 (11th Cir. June 22, 2023) (citations to appeal docket "***ADE***").  The defendant in that case asserts the same argument as Defendants here. *Id.* at ADE 39 at 29 ("Mr. Alfonso's conviction must be vacated because Congress exceeded its authority under the Felonies Clause by defining "vessel without nationality" in 46 U.S.C. § 70502(d)(1)(C), to include vessels that are not stateless under international law."). Two other cases presenting the same issues are consolidated with *United States v. Alfonso*. *Id.* at ADE 28.

Other courts in this District have ruled contrary to the decision here, but have acknowledged that the issue of whether or not MDLEA Section 70502(d)(1)(C) is constitutional has not been clearly decided. *See e.g.*, *United States v. Berroa*, No. 21-cr-20359, 2022 WL 1166535 (S.D. Fla. Apr. 20, 2022) ("[T]he Eleventh Circuit has not explicitly addressed the question of whether the Felonies Clause is bound by customary international law and whether the MDLEA's definition of stateless vessel in § 70502(d)(1)(C) exceeds international law"); *United States v. Grueso*, No. 21-cr-20486, 2022 WL 1650098 (S.D. Fla. May 2, 2022), *report and recommendation adopted*, 21-cr-20486, 2022 WL 1641904 (S.D. Fla. May 23, 2022); *United States v. Cueto-Sanchez*, No. 22-cr-20282, 2022 WL 3715855 (S.D. Fla. Aug. 29, 2022); *United States v. Santiago*, No. 21-cr-20599 (S.D. Fla. July 25, 2022); *United States v. Tovar*, No. 22-cr-20079 (S.D. Fla. June 13, 2022); *United States v. Martinez*, No. 22-cr-20040 (S.D. Fla. May 9, 2022); *United States v. Leon-Marin*, No. 22-cr-20147 (S.D. Fla. June 21, 2022); *United States v. Rodriguez*, No. 22-cr-20080, 2022 WL 3356632 (S.D. Fla. Aug. 15, 2022); *United States v. Suarez Chompol*, 21-cr-20179, 2022 WL 6568944 (S.D. Fla. Aug. 29, 2022), *report and recommendation adopted*, 21-cr-20179, 2022 WL 4445388 (S.D. Fla. Sept. 24, 2022).

over certain vessels because of the overbroad definition of "vessels without nationality," or "stateless" vessels. Pursuant to the MDLEA, only certain enumerated vessels are subject to the jurisdiction of the United States. 46 U.S.C. § 70502(c)(1)(A)–(F) (2018). One type of vessel subject to the jurisdiction of the United States is "a vessel without nationality." § 70502(c)(1)(A). A vessel is "without nationality" under Section 70502(d)(1)(C) when "the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." § 70502(d)(1)(C) (2018). However, in practice, vessels are deemed "stateless" vessels when a foreign nation neither confirms nor denies a vessel's claimed registry. For the reasons set forth below, the Court agrees with Defendants that, as enacted, section 70502(d)(1)(C) allows for the declaration of vessels as "stateless" on the consent or lack of consent from other sovereign nations, a mechanism that does not correspond with either a historical or contemporary understanding of a stateless vessel under international law.

The First Circuit in *Dávila-Reyes*, 23 F.4th at 195, examined whether MDLEA Section 70502(d)(1)(C) comports with international law. *Id.* ("[T]he MDLEA treats as stateless a vessel that, under international law, would be a vessel with nationality."). The First Circuit panel held that, as drafted, section 70502(d)(1)(C) "displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry – made in accordance with international law – without any affirmative evidence to the contrary." *Dávila-Reyes*, 23 F.4th at 187 (first citing *United States v. Bustos-Guzman*, 685 F.2d 1278, 1280 (11th Cir. 1982); then citing *The Chiquita*, 19 F.2d 417, 418 (5th Cir. 1927)). The Court determined that MDLEA Section 70502(d)(1)(C) is unconstitutional

because it allows the United States to "arrest and prosecute foreigners on foreign vessels by relying on a concept of statelessness that conflicts with international law." *Dávila-Reyes*, 23 4th at 194.[7] Following the filing of the instant Motion and supplemental briefing, the First Circuit vacated its opinion in *Dávila-Reyes* for rehearing en banc.

In *Dávila-Reyes*, the First Circuit panel engaged in a comprehensive discussion of the history of the Felonies Clause—which courts have interpreted as the enabling clause for the MDLEA—and its relationship to international law.[8] In that case, the court made clear that "the claim . . . is not that international law itself constrains Congress's authority to enact statutes. Rather, appellants contend that the Felonies Clause of the Constitution, by original design, requires Congress to adhere to the jurisdictional limits of international law with respect to determining statelessness." *Dávila-Reyes*, 23 F.4th at 173.

In reviewing the backdrop of the Framers' "commitment to international law principles [being] both pragmatic and ideological," the panel[9] found it "apparent that the Framers viewed international law as a restraint on Congress's enumerated powers bearing on foreign relations" and "inform[ing] our inquiry into the meaning of the Define

---

[7] In doing so, the First Circuit vacated the defendants' convictions in *Dávila-Reyes* and remanded the case to the district court to dismiss the MDLEA charges against them. *Dávila-Reyes*, 23 4th at 195.

[8] *See also* Eugene Kontorovich, *Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction over Drug Crimes*, 93 MINN. L. REV. 1191, 1193 (2009).

[9] Like the First Circuit, the Eleventh Circuit has engaged in a historical analysis of the Felonies Clause in the context of the MDLEA, relying on an understanding of its meaning "[a]t the time of the Founding" and the Framers' intentions. *See Campbell*, 743 F.3d at 811 (citing *The Federalist No. 42*, at 262 (James Madison)).

and Punish Clause and, specifically, the Felonies portion of the Clause." *Id.* at 175–77.[10] After a rigorous analysis of materials demonstrating the Framers' understanding of international law principles, piracy and felonies, the court concluded that "[t]he Framers sought to ensure that Congress would respect the sovereignty of other nations, and the limits placed on the prosecution of other countries' nationals is an essential component of the international system of mutual respect." *Id.* at 183. Indeed, the Framers' attention to the intersection of international law norms and U.S. law and jurisdiction is apparent. For example, in Federalist No. 3, John Jay discusses the importance of creating and maintaining "one federal government," and the comity and deference to be afforded to international law norms, particularly in the maritime space. The Federalist No. 3 (John Jay) ("It is of high importance to the peace of America that she observe the laws of nations towards all these powers."). Alexander Hamilton, in considering the role of juries, expressed concern that a lay jury may not have a competent and "thorough knowledge of the laws and usages of nations; and they will sometimes be under the influence of impressions which will not suffer them to pay sufficient regard to those considerations of public policy which ought to guide their inquiries." The Federalist No. 83 (Alexander Hamilton). And, in Federalist No. 42, James Madison specifically discussed the Felonies Clause, expressing concern that "felonies" and "piracies" would be defined by multiple sovereigns. The Federalist No. 42 (James Madison). Discussing Federalist No. 42, the First Circuit in *Dávila-Reyes* noted that:

---

[10] *See also United States v. Barbosa-Rodriguez*, No. 17-cr-577, 2023 WL 4230143, at *5 (D.P.R. June 28, 2023) ("There is evidence that the Framers intended international law to be a limit on Congress' power when invoking the Felonies clause." (first citing *Dávila-Reyes,* 23 F.4th at 176; then citing Eugene Kontorovich, *The "Define and Punish" Clause and the Limits of Universal Jurisdiction*, 103 Nw. U. L. Rev. 149, 182 (2009))).

> [T]he independent inclusion of "Piracies" in the Define and Punish Clause provides a clue to the Framers' intent regarding U.S. jurisdiction over felonies committed on foreign vessels. The separate references to "Piracies" and "Felonies" inescapably reflects the Framers' view that Congress's power over each category was meant to be distinct.

*Dávila-Reyes*, 23 F.4th at 178.

And, "[n]ecessarily, then, that constraint applies when Congress passes legislation deeming vessels on the high seas stateless." *Id.* at 183. The facts in *Dávila-Reyes* present the same situation that is present here—after the master of a vessel claims nationality for a vessel, the putative country of registry can neither confirm nor deny this assertion. Nonetheless, the United States categorizes that vessel as stateless and apprehends and prosecutes the non-citizens onboard. But, as the court in *Dávila-Reyes* observed, "a response stating that the country can neither confirm nor deny the claim, or the named country's failure to respond at all, may say very little about the veracity of the master's assertion of nationality. Indeed, the inability to confirm the claim may have more to do with the responding country's bureaucracy than with the vessel's status." *Id.* at 190. Ultimately, the *Dávila-Reyes* court determined that:

> The Framers intended international law to be a constraint on Congress's authority "[t]o define and punish . . . Felonies committed on the high Seas." Two centuries ago, the Supreme Court held that Congress lacked authority under the Felonies Clause to extend U.S. jurisdiction to felonies committed by foreign nationals on foreign vessels.

*Id.* at 195 (citations omitted). With section 70502(d)(1)(C), the First Circuit panel held that Congress extended U.S. jurisdiction beyond the limits of international law and, therefore, beyond the authority conferred by the Felonies Clause. Because this Court agrees with the reasoning in *Dávila-Reyes*, Defendants' Motion is granted.

Although the Government argues that Eleventh Circuit precedent forecloses this conclusion, no prior case in the Circuit answers the question presented here. *See Santos-*

*Santana*, 2022 WL 17973602, at *7. In *Santos-Santana*, "the defendants . . . failed to raise the constitutional argument before the district court," and the court noted that "there is no binding precedent from us or the Supreme Court that directly addresses the specific issue of whether § 70502(d)(1)(C) is constitutional under the Felonies Clause." *Id*. In this matter, Defendants have raised the issue of the constitutionality of section 70502(d)(1)(C) and, therefore, it is appropriately before the Court.[11]

While the Circuit has addressed the MDLEA in numerous other contexts, none of the court's earlier precedents about the extraterritorial application of our drug trafficking laws have answered the constitutional question presented in this case. *See United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012) (holding that Congress could not proscribe drug trafficking under the Offences Clause of Article I, Section 8, Clause 10, because it is not an offense against the Law of Nations and that the MDLEA was unconstitutional as applied to drug trafficking in another nation's territorial waters); *United States v. Hernandez*, 864 F.3d 1292, 1299 (11th Cir. 2017) (holding that the MDLEA contains a "conclusive-proof provision" for determining if a vessel is "without nationality" based on a statutory, not a constitutional analysis of section 70502(d)(1)(C)); *United States v. Campbell*, 743 F.3d 802, 803 (11th Cir. 2014) (resolving the question of whether

---

[11] Although the Eleventh Circuit suggested that such an argument might not prevail, "given [Eleventh Circuit] precedent concluding that other provisions of the MDLEA are constitutional under the Felonies Clause," see *Santos-Santana*, 2022 WL 17973602, at *7, this observation is dicta. As the Eleventh Circuit has made clear, "[d]icta is not binding on anyone for any purpose . . . . Accordingly, if the statement . . . is dictum, then we are 'free to give ... fresh consideration' to this question." *In re BFW Liquidation, LLC*, 899 F.3d 1178, 1186 (11th Cir. 2018) (first quoting *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010); then quoting *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992)); *see also United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) ("[W]e are not required to follow dicta contained in our own precedents." (quoting *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996))).

the Secretary of State's certification to establish extraterritorial jurisdiction for the prosecution of drug trafficking on the high seas violates a defendant's rights under the Confrontation Clause). In *Campbell*, a case upon which the Government relies, the Eleventh Circuit reasoned that "[s]tateless vessels . . . are 'international pariahs' that have 'no internationally recognized right to navigate freely on the high seas.'" *Campbell*, 743 F.3d at 810 (quoting *United States v. Marino-Garcia,* 679 F.2d 1373, 1382 (11th Cir. 1982), and then citing *United States v. Perlaza,* 439 F.3d 1149, 1161 (9th Cir. 2006)). Although stateless vessels are certainly "international pariahs," the issue here is whether, under the current statutory mechanism of section 70502(d)(1)(C), vessels which claim nationality, and would be considered with nationality pursuant to international law, may be branded as stateless pariahs without an unequivocal statement from the claimed sovereign regarding its status. As discussed in *Dávila-Reyes,* international law did not and does not countenance such an exercise of extraterritorial power.

### C. *The Delay Between Interdiction and Presentation to a Judicial Officer Informs the Constitutional Argument Before the Court*

Finally, Defendants argue that the Indictment should be dismissed as a sanction due to the delay between interdiction of Defendants and presentation to a judicial officer. (DE 28 at 16.) The Court held an evidentiary hearing on this issue on January 17, 2023. (DE 61.) The Court finds that the delay alone is not reason to dismiss the Indictment. The Eleventh Circuit has held that a defendant subjected to a forty-nine day delay between arrest and presentment pursuant to the MDLEA failed to demonstrate plain error by citing a case that held such a delay to be "unreasonable" under Federal Rule of Criminal Procedure 5(a). *United States v. Cabezas-Montano*, 949 F.3d 567, 593 (11th Cir. 2020). Additionally, the Eleventh Circuit has previously held that a nineteen day delay was

reasonable pursuant to Federal Rule of Criminal Procedure 5(a). *See United States v. Castillo*, 899 F.3d 1208, 1217–18 (11th Cir. 2018) (Martin, J., concurring). However, the prospect of such delay—and the frequency of the delays experienced by foreign defendants apprehended under the auspices of the MDLEA—poses serious logistical and legal problems in MDLEA prosecutions.[12] Defendants in this case, and in the many similar cases before this Court, face weeks-long delays between interdiction and presentation to a court.[13] Defendants here were intercepted on January 7, 2022, but were not brought before U.S. Magistrate Judge Jacqueline Becerra until February 1, 2022, a period of approximately twenty-four days. (DE 1.) In this case—and the other cases mentioned in this Order—the requirement that a defendant be taken "without unnecessary delay" to a magistrate is being stretched beyond established temporal constraints. Non-U.S. citizens are being apprehended and subjected to seizure for weeks before presentation to a court based on charging decisions—not related to time or geographic proximity—made by officials in Washington D.C.[14] These decisions, it appears, are not premised on the

---

[12] "In the United States, protections against lengthy pre-arraignment detainments are in place. However, these protections do not seem to extend to sea. In a span of just six years, 'more than 2,700 men . . . have been taken from boats suspected of smuggling drugs to Central America, to be carried around the ocean for weeks or months as the American ships continue their patrols.'" Alexandra Lyons, *The Maritime Drug Law Enforcement Act (MDLEA): Once of the Deadliest Weapons in America's Arsenal in the Ongoing War on Drugs*, 47 Tul. Mar. L.J. 133, 147–48 (2023) (quoting Seth Freed Wessler, "The Coast Guard's 'Floating Guantánamos,'" N.Y. Times, November 20, 2017).

[13] "Courts have extended the period of detainment days allowed from five days in the Caribbean in 1985 to an average detainment of eighteen days at sea. Detainment periods have even reached as high as ninety days. Not only is the length of detainment a cause for concern, but the conditions on board are as well. The detainees are chained to decks, sleep on thin rubber mats, are cut off from any communication, including with their consulate or family, and are not given adequate food." *Id.*

[14] This testimony was elicited during the January 17, 2023 evidentiary hearing. (DE 61.)

Federal Rules of Criminal Procedure but on factors the government has failed to fully articulate.[15] Although this on its own does not warrant dismissal of the Indictment, it indicates an additional dimension of overreach in the practical enforcement of this statutory scheme.

Consequently, for the reasons set forth in this Order, Defendants' briefing, the decision in *Dávila-Reyes*, and because the Eleventh Circuit has acknowledged that "there is no binding precedent from us or the Supreme Court that directly addresses the specific issue of whether § 70502(d)(1)(C) is constitutional under the Felonies Clause," *Santos-Santana*, 2022 WL 17973602, at *7, the Court grants Defendants' Motion.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Joint Motion to Dismiss the Indictment (DE 28) is **GRANTED** and the Indictment (DE 9) is **DISMISSED** for the reasons set forth above.

**DONE AND ORDERED** in Chambers in Miami, Florida on this 14th day of August, 2023.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[15] One factor may be the disagreement between courts regarding a "nexus" with the prosecuting forum: "[m]ost courts of appeals, including the Eleventh Circuit, which gets the most MDLEA cases, have held that the Fifth Amendment requires no nexus . . . the Ninth Circuit requires some nexus with the United States. Lyons, *supra* note 15, at 150.